**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

BRENDAN NASBY,

Plaintiff,

v.

HAROLD WICKHAM, *et. al.*,

Defendants.

Case No. 3:22-cv-00146-MMD-CLB

**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE[1]**

[ECF No. 26]

This case involves a civil rights action filed by Plaintiff Brendan Nasby ("Nasby") against Defendants Dawn Bequette ("Bequette"), Charles Daniels ("Daniels"), Tim Garrett ("Garrett"), John Henley ("Henley"), Kara LeGrand ("LeGrand"), and Harold Wickham ("Wickham") (collectively referred to as "Defendants"). Currently pending before the Court is Defendants' motion for summary judgment. (ECF No. 26.) On September 6, 2023, the Court gave Nasby notice of Defendants' motion pursuant to the requirements of *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988), and *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998). (ECF No. 36.) Nasby filed a motion for extension of time to file his opposition, (ECF No. 28), which the Court granted (ECF No. 30.) However, despite the extension, Nasby still did not file a response, and thus the Court *sua sponte* granted Nasby a second extension of time to file his response. (ECF No. 31.) To date, Nasby has still failed to file an opposition to the motion. For the reasons stated below, the Court recommends that Defendants' motion for summary judgment, (ECF No. 26), be granted.

///

///

_____

[1]    This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

1    **I.    BACKGROUND**

2        **A.    Procedural History**

3        Nasby is an inmate in the custody of the Nevada Department of Corrections

4    ("NDOC") and is currently housed at the Southern Desert Correctional Center ("SDCC").

5    (ECF No. 3.) On March 25, 2022, proceeding *pro se*, Nasby filed an inmate civil rights

6    complaint ("Complaint") pursuant to 42 U.S.C. § 1983 for events that occurred while Nasby

7    was housed at the Lovelock Correctional Center ("LCC"). (ECF No. 1-1, 5.)

8        Nasby's Complaint alleges the following: In April 2020, the Nevada Court of

9    Appeals affirmed the denial of Nasby's state habeas petition. (ECF No. 5 at 5-6.) Nasby

10    subsequently filed a petition for rehearing, which was also denied. (*Id.* at 5.) As a result,

11    Nasby had until July 7, 2020, to file a petition for review by the Nevada Supreme Court.

12    (*Id.*) Before the expiration of that deadline, Nasby sought and received an extension of

13    time to July 27, 2020. (*Id.* at 5-6.)

14        At approximately 7:00 a.m. on July 27, 2020, Nasby delivered his "NRAP 40B

15    Petition for Review to the law library for outgoing mail." (*Id.* at 6.) Four days later, the

16    petition was returned to Nasby "unfiled." (*Id.*) The Deputy Clerk of the Nevada Supreme

17    Court explained in a letter that the "Petition for Review was due on or before July 27,

18    2020," and "[t]he post mark date on your Petition for Reconsideration was July 28, 2020."

19    (*Id.* at 150.) Because the "[t]ime for filing a Petition for Review ha[d] expired," the Nevada

20    Supreme Court was "returning the documents, unfiled." (Id.) The Deputy Clerk also noted

21    that "[a] decision ha[d] been reached in your case and the remittitur ha[d] issued." (*Id.*)

22        Immediately after receiving this letter, Nasby asked Bequette, the law library

23    supervisor, why his petition "was not put in the mail on the morning [he] turned it in." (*Id.*

24    at 6.) Bequette explained that "legal mail is not mailed out until the day after it is delivered

25    to the law library." (*Id.*) Nasby had never heard of such a rule before. (*Id.*) He subsequently

26    discovered Administrative Regulation ("AR") 722.08(9), which provides that "legal mail will

27    not be held in the institution longer than 24 hours before transmittal, excluding weekends

28    and holidays." (*Id.* at 7.) Daniels, Wickham, Garrett, LaGrand, and Henley approved and

enforced AR 722.08(9), along with other "vague ARs" related to "outgoing legal mail." (*Id.* at 10.)

Shortly after his conversation with Bequette, Nasby sought a *nunc pro tunc* extension of time to file his petition with the Nevada Supreme Court. (*Id.* at 6.) This request was "returned to [Nasby] unfiled." (*Id.*) Thus, because Nasby's petition was not postmarked on the day he submitted it to the law library for mailing, he missed the July 27, 2020, deadline and was "denied the ability to have [his] petition . . . heard by the Nevada Supreme Court." (*Id.*) Had Nasby known that LCC's "practice was to hold outgoing mail overnight," he would have "requested a second extension of time" or "made accommodations to ensure [he] had the petition in the mail on time." (*Id.*)

Nasby subsequently filed grievances about this incident. (*Id.* at 9.) From the responses to those grievances, Nasby learned, among other things, that LCC officials were "placing the blame on" John Doe Mailroom Officer for the "delay in mailing." (*Id.*)

The Complaint was screened in accordance with 28 U.S.C. § 1915A(a). (ECF No. 4.) Based on the above allegations, the Court allowed Nasby to proceed on a single access to courts claim against Defendants Daniels, Wickham, Garrett, LeGrand, and Henley—the officials who allegedly approved and enforced LCC's policies regarding "outgoing legal mail," including the policy that caused Nasby's petition to be untimely. (*Id.*) Additionally, the Court allowed Nasby to proceed on the access to courts claim against Defendant Bequette—the official who allegedly "took… [Nasby's] outgoing legal mail on" July 27, 2020, "but did not place it in the outgoing mail until" the next day." (*Id.*)

On September 5, 2023, Defendants filed the instant motion for summary judgment arguing the evidence shows Nasby's Fourteenth Amendment rights were not violated, and, alternatively, Defendants are entitled to qualified immunity. (ECF No. 26.) Nasby did not oppose.

**B.    Undisputed Facts re: Summary Judgment**

The following undisputed facts as presented by Defendants are as follows: On July 27, 2020, at approximately 7:00 a.m., Nasby submitted legal mail for mailing to the law

library at LCC. (ECF No. 5 at 3.) Nasby's legal mail was postmarked and sent out of the institution the following day, July 28, 2020, in accordance with Administrative Regulation ("AR") 722 and LCC's Operating Procedure ("OP") 722. (*Id.*; ECF Nos. 26-1; 26-2.)

AR 722 was made effective on November 16, 2016. (ECF No. 26-1.) None of the Defendants drafted, reviewed, revised, or authorized this regulation. Only Defendant Daniels would have had authority to make this regulation effective, or to alter it, but he did not. (*Id.*; ECF No. 26-3.)

Nasby has previously filed a civil rights action asserting an access to courts claim. *See Nasby v. Nevada*, 79 F.4th 1052 (9th Cir. 2023). The Ninth Circuit Court of Appeals ultimately found Nasby had not suffered an actual injury sufficient to confer standing to pursue an access to courts claim because his habeas claim based on *Byford* was no longer arguable and therefore frivolous as that term is used in the context of an access to courts claim. *Id.* at 1058. Further, the concurring opinion noted that Nasby's "non-frivolous claims have been considered by all courts before which he was entitled to raise them and rejected by those courts on the merits." *Id.* at 1059.

## II.    LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show[] that the materials cited do not establish the absence or presence of a genuine

4

dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986). The nonmoving must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co.*

*v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed. R. Civ. P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

When a *pro se* litigant opposes summary judgment, his or her contentions in motions and pleadings may be considered as evidence to meet the non-party's burden to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

Upon the parties meeting their respective burdens for the motion for summary judgment, the court determines whether reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider evidence in the record not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3). Nevertheless, the court will view the cited records before it and will not mine the record for triable issues of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a nonmoving party does not make nor provide support for a possible objection, the court will likewise not consider it).

1    **III.    DISCUSSION**

2           Prisoners have a constitutional right of access to the courts. *See Lewis v. Casey*,

3    518 U.S. 343, 346 (1996). This right "requires prison authorities to assist inmates in the

4    preparation and filing of meaningful legal papers by providing prisoners with adequate law

5    libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430

6    U.S. 817, 828 (1977). This right, however, "guarantees no particular methodology but

7    rather the conferral of a capability—the capability of bringing contemplated challenges to

8    sentences or conditions of confinement before the courts." *Lewis*, 518 U.S. at 356. It is

9    this "capability, rather than the capability of turning pages in a law library, that is the

10   touchstone" of the right of access to the courts. *Id.* at 356-57. "The Supreme Court has

11   stated that 'the Fourteenth Amendment due process claim based on access to the courts

12   . . . has not been extended by the Court to apply further than protecting the ability of the

13   inmate to prepare a petition or complaint.'" *Cornett v. Donovan*, 51 F.3d 894, 898 (9th Cir.

14   1995) citing *Wolff v. McDonnell*, 418 U.S. 539, 576, (1974).

15          To establish a violation of the right of access to the courts, a prisoner must establish

16   that he or she has suffered an actual injury, a jurisdictional requirement that flows from the

17   standing doctrine and may not be waived. *Lewis*, 518 U.S. at 349. An "actual injury" is

18   "actual prejudice with respect to contemplated or existing litigation, such as the inability to

19   meet a filing deadline or to present a claim." *Id.* at 348. A prisoner must also show that the

20   access was so limited as to be unreasonable. *Vandelft v. Moses*, 31 F.3d 794, 797 (9th

21   Cir. 1994) (quotations omitted). Delays in providing legal materials or assistance that result

22   in actual injury are "not of constitutional significance" if "they are the product of prison

23   regulations reasonably related to legitimate penological interests." *Lewis,* 518 U.S. at 362.

24   The right of access to the courts is limited to nonfrivolous direct criminal appeals, habeas

25   corpus proceedings, and § 1983 actions. *Id.* at 353, n.3, 354-55.

26          Nasby fails to meet the actual injury threshold for establishing a meaningful access

27   to the courts claim. *See Alvarez v. Hill,* 518 F.3d 1152, 1155 (9th Cir. 2008) (prisoner must

28   show injury, such as the frustration of a nonfrivolous legal claim). Nasby's premise that he

1    would have succeeded in his post-conviction relief petitions had NDOC sent his mail out

2    on a particular day is merely speculative and unsupported by the evidence. *See*

3    *Soremekun,* 509 F.3d at 984 (conclusory statements, speculative opinions, and assertions

4    uncorroborated by facts are insufficient to create a genuine dispute).

5         Further, Nasby has previously filed a civil rights action asserting an access to courts

6    claim. *See Nasby v. Nevada*, 79 F.4th 1052 (9th Cir. 2023). The Ninth Circuit Court of

7    Appeals ultimately found Nasby had not suffered an actual injury sufficient to confer

8    standing to pursue an access to courts claim because his habeas claim based on *Byford*

9    was no longer arguable and therefore frivolous as that term is used in the context of an

10   access to courts claim. *Id.* at 1058. Additionally, the concurring opinion noted that Nasby's

11   "non-frivolous claims have been considered by all courts before which he was entitled to

12   raise them and rejected by those courts on the merits." *Id.* at 1059. Nasby cannot have

13   suffered an actual injury here, as the Ninth Circuit has already determined that various

14   habeas claims were frivolous, and the non-frivolous claims have already been considered

15   and rejected on the merits. *See Lewis,* 518 U.S. at 353, n.3, 354-55.

16        Thus, Nasby has provided no evidence outside of his conclusory assertions that

17   sending his mail out a day earlier would have garnered him a better result in his post-

18   conviction petitions than he in fact obtained and thus cannot demonstrate injury. *See*

19   *Lewis*, 518 U.S. at 353. Accordingly, Nasby fails to meet the threshold requirement for

20   bringing a cause of action for denial of meaningful access to the courts. *See Lewis*, 518

21   U.S. at 351-53; *see also Alvarez,* 518 F.3d at 1155. Consequently, Defendants are entitled

22   to summary judgment in their favor on Nasby's meaningful access to the courts claim.

23        Further, even if Nasby could show actual injury, he cannot show that Defendants'

24   regulations regarding mail are not reasonably related to legitimate penological interests,

25   or that Nasby was denied his meaningful access to the courts because the Defendants

26   used a constitutionally inadequate mail system.      The current version of AR 722 has

27   been in effect for nearly 7 years. (*See* ECF No. 26-1.) Nevada has long had a "prison

28   mailbox rule" which applies to direct appeals of criminal convictions. *Kellog v. Journal*

1      *Communications*, 108 Nev. 474, 835 P.2d 12 (1992). It is based on the United States

2      Supreme Court's decision in *Houston v. Lack*, 487 U.S. 266 (1988), citing *Fallen v. United*

3      *States*, 378 U.S. 139 (1964). In 2002, the Nevada Supreme Court ruled to exclude post-

4      conviction habeas petition deadlines from the rule. *Gonzales v. Nevada*, 118 Nev. 590,

5      594, 53 P.3d 901, 903 (2002). The *Houston* Court addresses "the vagaries of the mail,"

6      addressing delays from slow mail service or the court clerk's failure to stamp the notice on

7      the date received or deliberate delay on the part of prison authorities. *Houston*, at 271.

8      The *Kellog* Court transformed that to the "vagaries of the prison mail system." *Kellog*, at

9      477. Still, without more, none of these courts have suggested a prison's mail system, with

10      built-in institutional process that may cause general delays, e.g. billing, tracking,

11      accounting, pickup by or delivery to the U.S.P.S. would create a constitutional violation.

12      Here, AR 722 gives adequate notice to inmates that legal mail will not be held more than

13      24 hours, and in Nasby's case the policy was followed. (ECF No. 26-1 at 13.)

14           Accordingly, based on the evidence before the Court, Defendants have, with

15      authenticated evidence, met their initial burden on summary judgment as they have

16      shown that Nasby has not suffered an actual injury. Accordingly, the burden shifts to

17      Nasby to "designate specific facts demonstrating the existence of genuine issues for trial."

18      *In re Oracle Corp.*, 627 F.3d at 387. Nasby has failed to produce any evidence

19      Defendants prevented his meaningful access to the courts. Moreover, Nasby's claim fails

20      to meet the threshold inquiry for establishing a cause of action for denial of meaningful

21      access to the courts. *See Alvarez*, 518 F.3d at 1155. Therefore, even when viewing all

22      facts and drawing all inferences in the light most favorable to Nasby, the Court finds

23      summary judgment should be granted in favor of all Defendants.[2]

24      ///

25      _____

26      [2]     Where the Court determines a plaintiff's allegations fail to show a statutory or
constitutional violation, "there is no necessity for further inquiries concerning qualified

27      immunity." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Here, Nasby is unable to establish
a violation of his rights under the United States Constitution. Accordingly, there is no need

28      for the Court to address Defendants' arguments regarding qualified immunity.

1

**IV.    CONCLUSION**

For good cause appearing and for the reasons stated above, the Court recommends that Defendants' motion for summary judgment, (ECF No. 26), be granted.

The parties are advised:

1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.    This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

**V.    RECOMMENDATION**

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment, (ECF No. 26), be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that the Clerk of Court **ENTER JUDGMENT** accordingly and **CLOSE** this case.

**DATED**: _November 17, 2023_____.

_____

**UNITED STATES MAGISTRATE JUDGE**